UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID HENDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 09-141 (EGS) |
| | ) |
| JACQUELINE RATNER et al., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION

Before the Court is defendant Jacqueline Ratner's motion to dismiss and pro se plaintiff[1] David Henderson's "Response to the Order of Dismissal" ("Reponse"). The Response will be construed as a motion to reconsider and/or to amend the complaint, and will be denied as futile. Ratner's motion to dismiss will be granted, and the case will be dismissed in its entirety.

### BACKGROUND

Plaintiff David E. Henderson, now a citizen of Texas, was employed with the State Department's Foreign Service from 1969 to 1981, when he was involuntarily separated from the Service. *See* Federal Defendant's Motion to Dismiss ("Ratner's Mot. to Dismiss"), Declaration of Patricia Nelson-Douvelis ¶ 5. In 1994, Henderson applied to the State Department for retroactive disability retirement benefits. *Id.* ¶ 5 & Tab 2. The State Department refused to consider Henderson's application because it was untimely filed, and so informed Henderson by letter in 1996. *Id.* ¶ 5 & Tab 3. Henderson did not file a grievance in connection with his 1994

---

[1] Although pro se, Henderson asserts that he is, and has been, a member of the Texas bar since 1978. *See* "Plaintiff's Reply to [Ratner's] Motion to Dismiss – Second Response" ("Sur-reply") at 2.

application or as a result of the 1996 denial.  *See* Ratner's Mot. to Dismiss, Declaration of Joanne Lishman ¶ 4.

In June 2006, Henderson wrote to the Foreign Service Grievance Board ("FSGB"),[2] enclosing a copy of his 1994 application, stating, incorrectly, that the State Department "never responded" to him, and that "after 12 years and four submissions I can consider the application denied."  Ratner's Mot. to Dismiss, Ex. B.  Construing Henderson's communication as an appeal, the FSGB, through its Executive Secretary,[3] Jacqueline Ratner, sent Henderson a letter in July 2006, stating that "[u]pon reviewing the documentation attached to your appeal, the Foreign Service Grievance Board has found that it does not have jurisdiction at this point in the grievance process, as it appears that you have not exhausted all administrative remedies available to you."  Ratner's Mot. to Dismiss, Ex. C.  That letter also explained that "jurisdiction transfers" to the FSGB only upon appeal from either an agency's final decision or when the agency has not issued a final decision within 90 days after a grievance is filed, that an appeal to the FSGB from a final agency decision must be filed within 60 days of the decision, and that an appeal from a non-decision must be filed within 150 days after the administrative grievance was originally filed.  *Id.*

---

[2] The FSGB is "an independent adjudicatory body whose function is to adjudicate grievances filed by members of the foreign service."  *United States v. Paddack,* 825 F.2d 504, 508 n.5 (D.C. Cir. 1987).  It is comprised of "five persons, not employed by a foreign affairs agency or the foreign service," whose "function is to adjudicate grievances filed by members of the foreign service," including, among other things, "disputes involving separation from employment, and denial of a financial benefit to which the member claims entitlement . . . .  Any party aggrieved by a Board decision may obtain judicial review of that decision in the United States District Court . . . ." *Id.* (alterations, citations and internal quotation marks in the original omitted).

[3] The Executive Secretary of the FSGB, traditionally a member of the Foreign Service, is selected by and answers to the FSGB Chairman.  The Executive Secretary directs a staff of five persons and manages an annual budget of $1.5 million.  Ratner Mot. to Dismiss, Ex. A.

Henderson again wrote, pressing the FSGB to "register" his appeal. *Id.,* Ex. D. Because Henderson still had not established that he had exhausted his available administrative remedies, a pre-requisite to the Board's jurisdiction, the Board refused to entertain his case. *Id.,* Ex. E.

In June 2007, Henderson apparently asked the American Foreign Service Association ("AFSA")[4] to represent him in pursuing a claim against the State Department for retroactive disability benefits.[5] In October 2007, then-President of AFSA, John Naland, sent a letter to Henderson informing him that after AFSA staff had reviewed the documentation Henderson had submitted, "we find that the provisions of the Foreign Service Act preclude such a claim." Naland's Mot. to Dismiss, Ex. B.

In January 2009, Henderson filed this lawsuit against Ratner and Naland, each in both their "personal and professional capacities," Compl. at 3, seeking $12 million in damages, trebled to $36 million under a theory of a RICO conspiracy, *id.* at 3-4. Other than his bald reference to a RICO conspiracy, *id.* at 4, the only recognizable cause of action Henderson asserts in the complaint is an alleged breach of "contractual obligation" by Naland to represent him

---

[4] According to its internet site, the American Foreign Service Association is a dues-supported professional association of 14,000 members representing "28,000 active and retired Foreign Service employees of the Department of State and Agency for International Development (AID), as well as smaller groups in the Foreign Agricultural Service (FAS), U.S. & Foreign Commercial Service (FCS), and International Broadcasting Bureau (IBB)." www.afsa.org/whatis.cfm. "AFSA is the exclusive bargaining agent for the Foreign Service employees of the Department of State, AID, FAS, CS, and IBB. . . . AFSA also represents members in formal grievance proceedings, office of security and inspector general investigations, and EEO cases, while providing them informal assistance in dealing with administrative problems." *Id.*

[5] The Court does not know the exact nature of Henderson's request to AFSA, as it is not included in the record. As characterized by Naland's return letter, Henderson was trying to "ascertain whether it would be possible to proceed with a claim for disability retirement dating back to [his] separation from the service in 1981." Naland's Mot. to Dismiss, Ex. B.

before the FSGB. *See id.* at 3. As to Ratner, the complaint merely states that she "refused to acknowledge any of plaintiff's letters and [parcels[6]]," an allegation directly contradicted by the record evidence, *see* Ratner's Mot. to Dismiss, Exs. C & E, and that an unidentified staff person in Ratner's office said she "had not read any of [Henderson's] grievance decisions on related issues." *Id.* at 2.

Defendant Naland filed a motion to dismiss for failure to state a claim upon which relief may be granted, contending that Naland did not have any duty in any capacity to provide Henderson with representation in his belated claim against the State Department. *See* Naland's Mot. to Dismiss at 2; *see also id.* Exs. A & B. The Court issued an order directing Henderson to respond by March 31, 2009, or risk the motion being granted as conceded. *See* Order, Feb. 27, 2009. Although Henderson made a submission that was received on March 10, 2009 ("Opposition"), the Court denied leave to file because it was illegible.[7] Naland's motion to dismiss was granted as conceded by Order issued April 9, 2009. Henderson then submitted a Response, received on April 16, 2009. Henderson's handwritten Response was almost as illegible as was his Opposition; parts were so difficult to decipher that, despite numerous attempts to understand the message, they remained unintelligible until very recently, and other parts are still illegible. As now understood, the Response states that on "March 10" the Clerk of Court asked the Court to refuse to allow the Opposition to be the filed because it was illegible, explains that Henderson had been hospitalized and was dizzy, and asks "the court to allow this

---

[6] The handwriting is not legible, but the Court concludes that "parcels" may be the word intended.

[7] Local Civil Rule 5.1(f) requires that all papers submitted for filing be "typed . . . or by any . . . process that produces a clear black image on opaque white paper . . . . LCvR 5.1(f).

case to proceed on for plaintiff to have a preliminary in person hearing," and to allow the plaintiff to "file an expanded complaint." Response at 1-2. The Response did not include any rebuttal of the merits of Naland's argument that he owed Henderson no duty, and that he had breached no duty. After numerous repeated attempts over several months, the Court has been able to decipher enough of Henderson's March 10, 2009 Opposition to glean its import, and will permit the Opposition to be filed on the record and considered along with the Response.[8]

Defendant Ratner has filed a motion to dismiss, as to which Henderson has filed both an opposition and a sur-reply, the latter of which was typed. Neither of Henderson's submissions in response to Ratner's motion to dismiss mention Ratner by name or position, or provide additional information about the unspecified claims Henderson means to make against her.

## DISCUSSION

On a motion to dismiss, a pro se complaint is to be liberally construed in favor of the plaintiff. *Haines v. Kerner,* 404 U.S. 519, 520 (1972). In determining whether a complaint fails to state a claim upon which relief may be granted, a court generally "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), and "grant plaintiffs the benefit of all inferences that can be derived from the facts alleged," but need

---

[8] With his Opposition, Henderson filed "Plaintiff's Objection to Defense Counsel," in which he reports that in July 2006, he consulted with Beth Slovitz of Jordan Coyne about his retroactive retirement claim, and that "she said she could not help with plaintiff as she takes cases with the State Department Foreign Service Grievance Board and Executive Secretary Jacqueline Ratner, a defendant. Since Slovitz's law firm is defending John Naland, . . . it appears there is an unethical conflict of interest." Plaintiff's Objection to Defense Counsel at 2-3. The Objection appears to be an incomplete document; it is not presented as a motion and it makes no request for a remedy. Accordingly, the Court takes no action, as the facts provided by the plaintiff tend to show that Slovitz acted appropriately to avoid a conflict of interest by refusing to represent the plaintiff.

not accept either a plaintiff's legal conclusions, or inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted).

As the plaintiff has been previously advised, *see* Order, Feb. 27, 2009; Order, May 7, 2009, when a court considers matters outside the pleadings that have presented with a motion to dismiss under Rule 12(b)(6), "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). On a motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Burke v. Gould,* 286 F.3d 513, 517 (D.C. Cir. 2002). A material fact is one that is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby,* 477 U.S. at 248. A genuine issue is one where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id.*, as opposed to evidence that "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. A court considering a motion for summary judgment

must draw all "justifiable inferences" from the evidence in favor of the nonmovant. *Id.* at 255.

The nonmoving party, however, must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather, the nonmovant must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original). In the end, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Naland's Motion to Dismiss and Plaintiff's Opposition and Response

The substance of Henderson's March 10, 2009 Opposition to Naland's motion to dismiss consists of the following three points. One, that telephone records will show that he first contacted AFSA in June 2007 by telephone, not in the fall of that year as the affidavit of James H.S. Yorke, filed with Naland's motion to dismiss, incorrectly states. Opp'n at 2-3. Two, that Yorke told Naland that Henderson had bothered him too much with his frequent requests for help. *Id.* at 4. Three, that during a telephone conversation with Naland in September 2007, in which Henderson detailed his attempts to obtain retroactive retirement disability from the State Department, Naland "essentially told plaintiff he was a liar and . . . [that he] had more pressing AFSA business to attend to such as getting . . . benefits for AFSA members." *Id.* at 5. Had the Court had the benefit of this information before issuing its April 9, 2009 Order dismissing the claims against Naland, the result would have been the same. Accepting these contentions as true, Henderson has not stated a claim against Naland. He has not alleged facts that show that Naland

owed any duty to Henderson, that Naland's conduct constituted a breach of any duty, or that Naland's conduct was a proximate cause of any injury to Henderson, let alone engaged in a RICO conspiracy. Thus, even considering Henderson's Opposition, the complaint fails to state a claim against Naland upon which relief may be granted, and warrants being dismissed.

Henderson's Response, liberally construed, will be analyzed both as a motion made Federal Rule of Civil Procedure 59(e) seeking to alter the judgment, and as a motion made under Federal Rule of Civil Procedure 15(a)(2) seeking leave to amend the complaint. A motion to reconsider under Rule 59(e) "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear legal error or prevent manifest injustice." *Ciralsky v. Central Intelligence Agency,* 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C. Cir. 1996)). Furthermore, a "Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled," *New York v. United States,* 880 F. Supp. 37, 38 (D.D.C. 1995), or a vehicle for presenting theories or arguments that could have been advanced earlier. *Kattan v. District of Columbia,* 995 F.2d 274, 276 (D.C. Cir. 1993); *W.C. & A.N. Miller Cos. v. United States,* 173 F.R.D. 1, 3 (D.D.C. 1997). A Rule 15(a)(2) motion for leave to file an amended complaint should be freely granted except when there is sufficient reason to deny the amendment, such as when the amendment would be futile. *National Community Reinvestment Coalition v. NovaStar Financial,* 604 F. Supp. 2d 26, 29 (D.D.C. 2009) (quoting *Firestone*, 76 F.3d at 1208).

Henderson's Response offers no basis on which to premise a reconsideration of the Order dismissing the suit against Naland. The Response offers no substantive rebuttal to the merits of

Naland's motion to dismiss, and — in the face of the facts presented — the Court cannot conceive of any such rebuttal. The Response also does not reveal what would be in an "expanded" complaint if it were allowed, and thus does not identify any basis on which to allow an amendment to the complaint. Again, the Court cannot conceive of any amendment to the complaint that would not be futile. The record before the Court does not establish or even suggest that Naland, in any capacity, had any contractual or other duty to Henderson, or that Naland acted in any way that proximately caused any injury to Henderson. Because Henderson has not provided a reason upon which to base either a reconsideration or amendment, and the Court is aware of no reason, the requests in Henderson's Response will be denied as futile, and the Order issued April 9, 2009 dismissing all claims against Naland in any capacity will stand.

Ratner's Motion to Dismiss

The complaint purports to sue Ratner in her "professional" capacity. Compl. at 3. As an employee of the State Department serving as Executive Secretary to the FSGB, a suit against Ratner in her official capacity is a suit against the United States. *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985). The United States, as sovereign, is immune from suit except where it has consented to suit. *FDIC v. Meyer,* 510 U.S. 471, 486 (1994). Henderson does not identify a right of action for any claim against Ratner in her official capacity. Even if the complaint were construed, very liberally, to assert a negligence claim against Ratner in her role as Executive Secretary, the claim fails. A negligence claim may be brought against an official of the United States only under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 et seq., which requires that any such claim first be exhausted in administrative proceedings before this Court may exercise jurisdiction over the claim. *See* 28 U.S.C. § 2675(a) (providing that filing a claim

with the agency is a prerequisite to jurisdiction). Here, there is no evidence that the claim was exhausted. Furthermore, it cannot now be exhausted as it is time-barred. Ratner responded to Henderson on behalf of the FSGB in 2006, *see* Ratner's Mot. to Dismiss, Ex. C, and any FTCA claim must be presented to an agency within two years after the date the claim accrued, *see* 28 U.S.C. § 2401(b) (specifying that a claim must be presented to the agency within two years of the date it accrued). Therefore, the claims against Ratner in her official capacity must be dismissed for lack of subject matter jurisdiction.

The complaint also asserts unspecified claims against Ratner in her personal capacity. Compl. at 3. Ratner, however, has not been served in her personal capacity and, absent effective service, this Court has no personal jurisdiction over her. Therefore, the complaint against Ratner in her personal capacity may be dismissed for want of personal jurisdiction. Even if this defect were to be cured, however, the claims against Ratner in her personal capacity must still be dismissed. First, the complaint does not contain any factual allegation to support a claim that Ratner participated in a RICO conspiracy. Second, it is beyond dispute that whatever conduct Henderson asserts as the basis for his unspecified claim against Ratner, it was conduct in the performance of her duties as staff to the FSGB. The FSGB is an adjudicatory body whose members enjoy absolute immunity from damages suits in their personal capacity for the Board's adjudications. *See Butz v. Economou,* 438 U.S. 478, 511-13 (1978) (applying absolute immunity to the members of adjudicatory bodies in federal agencies for decisions made in the performance of their adjudicatory roles). As Executive Secretary, Ratner's relation to the FSGB is akin to that of a clerk of court's relation to a court. Thus, like a court's auxiliary staff, absolute immunity from personal liability extends to the Executive Secretary of the FSGB for actions taken in the

performance of her duties.  *See Sindram v. Suda*, 986 F.2d 1459, 1461 (D.C. Cir. 1993) ("[I]mmunity applies to all acts of auxiliary court personnel that are basic and integral parts of the judicial function . . . .") (alterations and internal quotation marks omitted).  Thus, the RICO conspiracy claim and any other intended but unspecified claims against Ratner in her personal capacity must also be dismissed for lack of subject matter jurisdiction, if not lack of personal jurisdiction.

In any case, the evidence in the record shows no misconduct on the part of Ratner, and directly contradicts the sole allegation in the complaint that she did not respond to Henderson's communication.  *See* Ratner's Mot. to Dismiss, Exs. C & E.  Therefore, even if the claims were not dismissed for lack of jurisdiction, Ratner would be entitled to summary judgment on this record.  *See* Fed. R. Civ. P. 12(b)(6), 12(d), 56.

## CONCLUSION

With this decision, no claim survives against any defendant.  Accordingly, the action will be dismissed in its entirety.  A separate order accompanies this memorandum opinion.

/s/
EMMET G. SULLIVAN
United States District Judge

Dated:  December 29, 2009